**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 1:25-cv-04458-APM |
| v. | |
| THE DISTRICT OF COLUMBIA, ACTING CHIEF OF POLICE JEFFREY CARROLL, in his official capacity as Chief of the Metropolitan Police Department of the District of Columbia, and THE METROPOLITAN POLICE DEPARTMENT OF THE DISTRICT OF COLUMBIA, | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Comes now, the United States of America, and respectfully urges this Court to deny in full

Defendants' Motion to Dismiss.

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 3

STANDARD OF REVIEW ................................................................................................... 5

ARGUMENT ......................................................................................................................... 5

    I.    The United States Has Properly Alleged a Cause of Action under Section 12601 Based on Defendants' Pattern or Practice of Law Enforcement Misconduct ........................................... 5

        A.    Section 12601's Broad Scope Protects against Law Enforcement's Unconstitutional Application of Law to Violate Constitutional Rights ............................................................. 5

        B.    Section 12601's Protection of Constitutional Rights Includes the Individual Right to Bear Arms. ...................................................................................................................... 7

        C.    The United States' Complaint Plausibly Alleged Facts that Defendants Are Liable under Section 12601 for Their Unconstitutional Conduct. ...................................................... 9

    II.    A Pattern or Practice of Law Enforcement Misconduct Violating Second Amendment Rights Is as Cognizable as the Protection of Any Other Constitutional Right. ......................... 12

        A.    Section 12601 Is Not Limited to Remedying Excessive Force ................................... 12

        B.    Section 12601 Authorizes the Department to Bring a Cause of Action When Localities' Law Enforcement Enforce Unconstitutional Laws ................................................................. 13

        C.    Legislative History Does Not Modify Section 12601 .................................................. 16

        D.    Past Agency Practice Does Not Limit the Scope of a Statute ..................................... 18

        E.    The Phrase "Systemic Police Misconduct" Does Not Appear in the Statute .............. 21

        F.    There Is No Requirement that Congress Must Have Anticipated All of the Possible Applications of Section 12601 ....................................................................................... 22

        G.    Defendants' Interpretation of Section 12601 Leads to Absurd Results ....................... 22

    III.    Defendants' "Facial Challenge" Strawman Attack Fails .............................................. 23

    IV.    There Is No Exception to Section 12601 Liability for Acts Taken Pursuant to Laws.. 25

    V.    Defendants' Supposed Federalism Concerns are Meritless ........................................... 26

CONCLUSION ................................................................................................................... 27

**INTRODUCTION**

This case is straightforward.  Relevant here, Section 12601 makes it unlawful for any governmental authority, or any agent thereof, to engage in a pattern or practice of conduct by law enforcement officers that deprives persons of rights secured or protected by the U.S. Constitution. *See* 34 U.S.C. § 12601 (Section 12601).  Defendants do not dispute that (1) the District is a "governmental authority;" (2) Chief Carroll and the Metropolitan Police Department (MPD) are its agents; (3) Chief Carroll and the MPD are acting on its behalf when they enforce the District's laws; and (4) the District's law enforcement officers routinely enforce its assault weapons ban.  If the assault weapons ban is unconstitutional as the United States asserts, then the United States prevails under Section 12601 based on these undisputed facts.  Of course, whether the assault weapons ban is unconstitutional is for the Court to decide based on a robustly developed factual record, not for Defendants to assume for purposes of their motion to dismiss.

Instead, Defendants and their Amici take umbrage with the fact that Section 12601 protects the fundamental constitutional right to keep and bear arms from law enforcement misconduct. Their desire to limit the statute's protection to exclude a right that they disfavor, however, is not a valid ground to dismiss the United States' Complaint.[1]

Defendants' Motion to Dismiss must fail because the Department of Justice (Department) has plausibly alleged a cause of action under Section 12601 that Defendants' pattern or practice of law enforcement misconduct deprives persons of their Second Amendment rights. And—as the Supreme Court made clear to Washington, D.C. in *Heller*—the Second Amendment right to keep and bear arms is just such a constitutional right for law abiding citizens.

---

[1] The Second Amendment is on par with other rights secured by the Constitution.  The Supreme Court has stated, on multiple occasions, that the Second Amendment does not protect "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 70 (2022) (quoting *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 780 (2010)).

Contrary to Defendants' argument, Congress' broad grant of authority to the Department under Section 12601's plain text includes protection of this Second Amendment right. Defendants point out that the Department has applied Section 12601 in Fourth Amendment contexts to remedy excessive force and unlawful searches and arrests. But nothing in the statute's plain text limits its application to only those contexts. Indeed, past administrations have exercised their prosecutorial discretion to use Section 12601 to investigate and bring enforcement actions to remedy: enforcement of local ordinances that are facially unconstitutional, First Amendment violations, national origin discrimination, biased policing, excessive fines and fees, and due process violations.[2] Thus, Congress' broad grant of authority to the Department under Section 12601's plain text includes protection of this Second Amendment right, and the Department's past practice bolsters that broad application.

Likewise, Defendants' strawman argument that the Department's Complaint is merely a facial challenge also fails because the Complaint is based on law enforcement misconduct. Even if law enforcement acts within the District's statutory scheme, that does not inoculate Defendants from liability for their conduct. Indeed, it makes it worse. Such an absurd defense would permit local law enforcement to violate *any* constitutional right by claiming that they only followed unconstitutional law. No court should ordain such a rationalization. Accordingly, this Court should deny in full Defendants' motion to dismiss. And, if the Court disagrees, the Department seeks leave to file an amended complaint.

---

[2] Amici sought the Department's consent to filing its motion for leave to file an amicus brief. The Department conditioned that consent on the Amici's agreement that the former Civil Rights Division's attorneys "cannot convey or intimate any internal deliberative process or privilege" and asked for fourteen days to respond. Counsel for Amici agreed to these conditions. However, Amici's brief relies, in part, on internal, client-privileged "traditional" priorities. This line of argument not only violates counsel's agreement but rests on internal, deliberative work product. Since the Court now has granted Amici's participation, we request that the Court refuse consideration of Amici's line of argument based on internal, deliberative Department work product.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Factual allegations need not be detailed, but facts "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]hen a court decides whether a [party] stated a valid claim for relief, a court must treat the complaint's factual allegations as true and may not use factual findings and legal conclusions drawn from outside the pleadings." *United States v. Emor*, 785 F.3d 671, 677 (D.C. Cir. 2015). Courts may take notice of properly authenticated documents that are "not subject to reasonable dispute," such as documents downloaded from an agency's website. Fed. R. Evid. 201(b); *Johnson v. Comm'n on Presidential Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016).[3]

## ARGUMENT

**I.    The United States Has Properly Alleged a Cause of Action under Section 12601 Based on Defendants' Pattern or Practice of Law Enforcement Misconduct.**

**A.    Section 12601's Broad Scope Protects against Law Enforcement's Unconstitutional Application of Law to Violate Constitutional Rights.**

The United States brought this action pursuant to the statutory authority set forth in Section 12601. *See* Compl. ¶¶ 14, 28. In interpreting the statutory text,

---

[3] Defendants have attached voluminous supplementary materials to their motion and request the Court to refer to those materials. This is plainly improper. Plaintiff objects to Defendants' tactic and requests the Court not to consider these documents, or arguments based on them, in its resolution of Defendants' motion. Defendants attempt to circumvent the legal standard for consideration of their motion to dismiss by arguing that the Court may take judicial notice of all "federal agency documents." Def. Memo. 5, n.3. This is not the law. Defendants have not attempted to lay any foundation that the documents they have attached to their motion meet the Fed. R. Evid. 201 standard. The documents are not authenticated. Their source is unknown.

> As the Supreme Court has 'stated time and again . . . courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.

*Eagle Pharms., Inc. v. Azar*, 952 F.3d 323, 339–40 (D.C. Cir. 2020) (cleaned up) (internal citations and quotation marks omitted).  Such is the case here.  The plain text of Section 12601 is unambiguously broad.  Section 12601(a) states in pertinent part:

> (a) Unlawful conduct

> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers . . . that deprives persons of rights, privileges, or immunities *secured or protected by the Constitution or laws of the United States.*

 (emphasis added).  The italicized text bears emphasis.  The scope of the rights protected by statute could hardly be broader.  The plain text makes it unlawful for any covered entity or person to deprive a citizen of *any* "right[], privilege[], or immunit[y] secured or protected by the Constitution or laws of the United States."  Section 12601 authorizes the United States to seek relief against constitutional violations like 42 U.S.C. § 1983 authorizes individuals to seek relief against such violations.  But there is an important difference:  Section 12601 "goes even further than [Section] 1983."  *United States v. Cnty. of Maricopa, Arizona*, 889 F.3d 648, 653 (9th Cir. 2018).[4] Defendants engaged in an extensive and dizzyingly complex parsing of the statutory text, (Def. Memo. 14-19), but that exercise was pointless.  The statute is both simple and unambiguous, and the broad scope of the statutory text is inescapable to any reasonable reader.  Thus, to state a cause of action under Section 12601, the Department's Complaint must—and does—allege three

---

[4] As discussed below, Section 12601 goes further by allowing actions directly against "government authorities," while under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-96 (1978), Section 1983 plaintiffs may sue municipal entities only in limited circumstances.

elements: (1) a "governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority;" (2) "engage[d] in a pattern or practice of conduct by law enforcement officers;" and (3) that conduct operated to "deprive[] persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States."

**B.    Section 12601's Protection of Constitutional Rights Includes the Individual Right to Bear Arms.**

The Second Amendment provides the fundamental protection of the right to bear arms—a right that is no lesser than other constitutional rights which Section 12601 protects against law enforcement misconduct. In *D.C. v. Heller*, 554 U.S. 570 (2008), the Court ruled that the Second Amendment must be interpreted in light of the Constitution's text, history, and tradition. 554 U.S. at 576-628. The Court also held that the Second Amendment protects those weapons that are in "common use" by law-abiding citizens. *Id*. at 624, 627. Handguns are in common use by law-abiding citizens. *Id*. at 628-29. Therefore, the Court held that the District's handgun ban violated the Second Amendment. *Id*., at 628–29, 635. The Court's later Second Amendment decisions in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024), did not disturb the historically based "common use" test with respect to the possession of particular weapons. *See Snope v. Brown*, 145 S. Ct. 1534 (2025) (Kavanaugh, J., statement respecting denial of certiorari) (citing *Bruen*, 597 U.S. at 47 and *Rahimi*, 602 U.S. at 735-36 (Kavanaugh, J., concurring)).

Second Amendment plaintiffs have the initial burden of showing that the Second Amendment's "plain text covers [their] conduct." *Id*. (quoting *Bruen*, 597 U.S. at 24). Once a challenger makes that showing, "the Constitution presumptively protects [his] conduct," and the burden shifts to the government to "demonstrate that [its] regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. If the defendant government

7

fails to make that showing, the restriction must be deemed unconstitutional. *Id*. Here, the Department has alleged that Defendants have implemented a practice of categorical prohibition on AR–15s and other weapons in common use. AR–15s are clearly "Arms" under the Second Amendment's plain text. *Id*. In *Heller*, 554 U.S. at 581, the Court has held that the term "Arms" covers all "'[w]eapons of offence, or armour of defence.'" Thus, "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id*. at 582; accord *Rahimi*, 602 U.S. at 691; *Bruen*, 597 U.S. at 28; *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam). AR–15s fall squarely within this category. *Snope*, 145 S. Ct. at 1535 (Thomas, J., dissenting from denial of certiorari).

In *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025), the Court rejected Mexico's argument that it could sue the manufacturers of AR-15s because they are "military style" assault weapons. The Court rejected that argument because AR-15s are widely legal and owned by ordinary citizens. Specifically, Justice Kagan, writing for the Court, stated:

> Finally, Mexico's allegations about the manufacturers' "design and marketing decisions" add nothing of consequence. As noted above, Mexico here focuses on the manufacturers' production of "military style" assault weapons, among which it includes AR–15 rifles [and] AK–47 rifles. *But those products are both widely legal and bought by many ordinary consumers. (The AR–15 is the most popular rifle in the country*. See T. Gross, How the AR–15 Became the Bestselling Rifle in the U. S., NPR (Apr. 20, 2023.)). The manufacturers cannot be charged with assisting in criminal acts just because Mexican cartel members like those guns too.

*Id*., at 1569 (cleaned up) (emphasis added). *See also Garland v. Cargill*, 602 U.S. 406, 429-30 (2024) (Sotomayor, J., dissenting) (AR-15s are "commonly available, semiautomatic rifles.").

In *Heller v. D.C.*, 670 F.3d 1244 (D.C. Cir. 2011), then-judge Kavanaugh anticipated *Bruen's* "text and history" approach to Second Amendment analysis. Employing that analysis, he concluded that AR-15s are in common use and therefore protected by the Second Amendment. *Id.* at 1286-88 (Kavanaugh, J., dissenting). Moreover, under the Supreme Court's Second

Amendment precedents, it is analytically difficult to distinguish the AR–15s at issue here from the handguns at issue in *Heller*. *Snope*, 145 S. Ct. at 1534 (Kavanaugh, J., statement respecting denial of certiorari). AR–15s are semi-automatic, but so too are most handguns. *Id*. Law-abiding citizens use both AR–15s and handguns for a variety of lawful purposes, including self-defense in the home. *Id*. Accordingly, Supreme Court precedent is clear: the Second Amendment provides an individual right to bear arms recognized within the Amendment's history and tradition. And, here, the Department has adequately plead that the Defendants have engaged in a pattern or practice of law enforcement misconduct in depriving lawful gun owners of their right to bear arms—including AR-15s—that are covered by the Second Amendment's plain text.[5]

### C.    The United States' Complaint Plausibly Alleged Facts that Defendants Are Liable under Section 12601 for Their Unconstitutional Conduct.

The Complaint alleges a pattern or practice of Defendants' misconduct in arresting law-abiding citizens for possessing Second Amendment-protected firearms which Defendants refuse to register because Defendants apply an unconstitutional law. Compl. ¶¶ 22, 40-41. This law enforcement misconduct falls squarely within Section 12601's protection of individual rights. Accordingly, the Complaint claim is facially plausible and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. *Id*. The factual allegations

---

[5] In litigation, the burden shifts to Defendants to show that banning AR–15s is "consistent with this Nation's historical tradition of firearm regulation." *Id*., at 1535-36, (Thomas, J. dissenting) (citing *Bruen*, 597 U.S. at 17). But there is no "historical regulation" that could serve as "a proper analogue" to Defendants' ban. *Id*.

need only "be enough to raise a right to relief above the speculative level." *Id*. There is no requirement of "heightened fact pleading of specifics." *Id*. at 570. A plaintiff need only plead enough facts to state a claim to relief that is plausible. *Id*. As set forth in this section, the United States' Complaint more than satisfies the *Twombly* standard.

The Court should reject out of hand Defendants' efforts to subject the United States to a heightened pleading standard. Defendants assert that the Complaint must contain everything the United States must prove at trial. Def. Memo. 31. This is about as far a departure from Rule 8's "short and plain statement" requirement as it is possible to get. Defendants also assert that the United States has a heightened pleading burden because they contend the Complaint is a "facial challenge" to the District's laws. Def. Memo. 32. This is both an incorrect characterization of the Complaint and an unsupported pleading standard.

The District has enacted a series of statutory provisions that effectively ban so-called "assault weapons."[6] Def. Memo, 2. A citizen of the District may not "possess or control" a firearm without a valid registration certificate, but an assault weapon cannot be registered. *Id*. Anyone convicted of possessing an unregistered firearm may be imprisoned for up to one year. D.C. Code §§ 7-2501.01, 2507.06. Based on these laws, the United States made the following allegations in its Complaint:

- Citizens have a right under the Second Amendment to "keep and bear" those arms that are "in common use today." Compl. ¶ 1 (citing *Bruen*, 597 U.S. at 47; *Heller*, 554 U.S. at 627).

---

[6] The term "assault weapon" is not a technical term used in the firearms industry. Rather, as Justice Thomas has aptly noted, it is a rhetorically charged political term developed by anti-gun publicists. *See Stenberg v. Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting) (quoting Bruce H. Kobayashi & Joseph E. Olsen, *In Re 101 California Street: A Legal and Economic Analysis of Strict Liability for the Manufacture and Sale of "Assault Weapons,"* 8 Stan. L. & Pol'y Rev., Winter 1997 41, 43) ("Prior to 1989, the term assault weapon did not exist in the lexicon of firearms. It is a political term, developed by anti-gun publicists to expand the category of assault rifles so as to allow an attack on as many additional firearms as possible on the basis of undefined evil appearance." (internal quotation marks omitted)).

- The District prohibits the registration of certain weapons in common use in America. Compl. ¶ 19 (citing D.C. Code § 7-2501.01(3A)(A)).

- AR-15-type rifles are in common use and therefore protected by the Second Amendment. Compl. ¶¶ 4, 31 (citing *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 297 (2025) (noting that "[t]he AR-15 is the most popular rifle in the country")).[7]

- District of Columbia law enforcement officials routinely arrest law-abiding citizens for possessing firearms that are protected under the Second Amendment but not registerable in the District and will continue to do so. Compl. ¶ 22.

- The District's unconstitutional law affirmatively obligates the District's law enforcement officers to deny registration of Second Amendment-protected firearms and to arrest individuals for engaging in conduct protected by the Second Amendment (i.e. possessing constitutionally protected arms). Compl. ¶ 40.

- Accordingly, Defendants have engaged in (and continue to engage in) a pattern or practice of conduct by law enforcement officers that deprives people of rights secured and protected by the Constitution, in violation of 34 U.S.C. § 12601(a). Compl. ¶ 41.

The application of Section 12601(a) to this action is straightforward. The United States alleges that when the District's law enforcement officers are enforcing the District's unconstitutional firearms ban, they are engaging in a pattern or practice of conduct that deprives persons of rights protected by the Constitution. Specifically, the District's law enforcement officers routinely prohibit the District's citizens from registering constitutionally protected arms such as the AR-15. And they routinely arrest persons who possess such constitutionally protected arms. Thus, the allegations of the Complaint state a violation of the plain meaning of the text of Section 12601(a), and the Attorney General has the authority to bring this action seeking relief under Section 12601(b).

---

[7] The Complaint alleges that the District bans arms in common use other than the AR-15. *See, e.g.*, Compl. ¶¶ 32, 33. However, this discussion focuses on the AR-15 because it is a "paradigmatic example" of the sort of weapon banned by statutes banning "assault weapons." *Bevis v. City of Naperville, Illinois*, 85 F.4th 1175, 1183 (7th Cir. 2023); *Bianchi v. Brown*, 111 F.4th 438, 453 (4th Cir. 2024), cert. denied sub nom. *Snope v. Brown*, 145 S. Ct. 1534 (2025) (same).

II.    **A Pattern or Practice of Law Enforcement Misconduct Violating Second Amendment Rights Is as Cognizable as the Protection of Any Other Constitutional Right.**

Defendants devote most of their brief (pages 1-31) to advancing a remarkable proposition: The text of Section 12601 does not really mean what it plainly says.  Below, Plaintiff debunks each of Defendants' arguments for this proposition.

A.    **Section 12601 Is Not Limited to Remedying Excessive Force.**

Defendants assert that Section 12601 was designed to address a specific problem: physical or racial police brutality in the wake of the Rodney King's arrest.  Def. Memo. 5, 6, 13, 22.  And while they never flat out say it, Defendants strongly imply that the statute applies *only* to that problem.  That is obviously not true.  The plain text of the statute is extraordinarily broad and applies to all patterns or practices of law enforcement unconstitutional conduct.  Moreover, the enforcement history of the statute has not been limited to remedying police brutality.  For example, in *United States v. Town of Colorado City*, 935 F.3d 804 (9th Cir. 2019), the United States sued two towns under Section 12601 for engaging in a pattern or practice of violating the constitutional rights of residents who were not members of the Fundamentalist Church of Jesus Christ of Latter-Day Saints ("FLDS").  *Id*. at 805-06.  The United States alleged that the towns functioned as an arm of the church and conspired with FLDS leaders to use the towns' municipal resources to advance church interests in violation of the Establishment Clause of the First Amendment. *Id*. at 806.

The Ninth Circuit held that the towns were liable under Section 12601 for the violation of their citizens' religious liberties.  Nothing in the case implicated police brutality.  Rather, the Circuit Court held that "Section 12601 provides a civil cause of action to the United States Attorney General when a local government's agents 'engage in a pattern or practice of conduct . . . that deprives persons of rights, privileges, or immunities secured or protected by the Constitution

12

or laws of the United States'" (which rights obviously included the citizens' religious liberty rights). *Id.* at 811. Nothing in the statute's plain text limits the authority of the United States to police brutality cases, and as *Colorado City* demonstrates, the statute has been employed to address other types of constitutional violations.[8]

**B.    Section 12601 Authorizes the Department to Bring a Cause of Action When Localities' Law Enforcement Enforce Unconstitutional Laws.**

Defendants argue that Section 12601 is "laser focus[ed] on only one type of harm: harm caused by 'conduct by' law enforcement officers." Def. Mem. 20. Defendants argue Section 12601 implies an "actor-based constraints" limiting the statute's application to only when individual law enforcement officers have gone rogue and engaged in misconduct, such as police brutality. *Id.* Thus, according to the Defendants, the statute cannot apply in cases in which law enforcement officers are acting pursuant to an official policy or law because that would, in effect, be an attack on the statute itself. Defendants cite no case holding that conduct by law enforcement officers that results from the enforcement of a city's own unconstitutional laws cannot be the basis for liability under Section 12601.

There is no such authority, because just the opposite is true. The courts that have considered the matter have held that law enforcement conduct resulting from implementation of an official policy or law may be the predicate of an action under Section 12601. See *Cnty. of Maricopa, Arizona*, 889 F.3d at 653 ("Maricopa County is liable for violations of . . . § 12601 stemming from its own official policies."); *Colorado City*, *supra*, 935 F.3d at 810 (legislative

---

[8] Indeed, in prior Administrations, including those in which members of the Amici worked, the Department has asserted Section 12601 jurisdiction for claims that law enforcement enforced local ordinances that are allegedly unconstitutional on their face with respect to profanity laws and stop-and-identify ordinances. The Department also has exercised Section 12601 jurisdiction for various other constitutional and federal statutory claims: First Amendment violations of free expression, national origin discrimination, biased policing, fines and fees, right to counsel, and due process. Under such prior administrations, the Department has even asserted rights not based in the constitution or statute, such as extending special rights to non-protected classes or rights to a non-police emergency response.

13

history of predecessor bill supports conclusion that the United States may prosecute municipalities when local police departments violate constitutional rights, and this is the case whether or not those violations resulted from implementation of an official policy).  Surprisingly, one of the cases that the Defendants cite—*United States v. Lauderdale Cnty., Mississippi*, 914 F.3d 960 (5th Cir. 2019)—undermines their own argument.  In that case, the court held that Section 12601 authorizes lawsuits against "counties, city councils, mayors, and police commissioners . . . " among others. *Id*. at 968.  *See also* Eugene Kim, *Vindicating Civil Rights Under 42 U.S.C. § 14141:[9] Guidance from Procedures in Complex Litigation*, 29 Hastings Const. L.Q. 767, 776 (2002) ("When a specific unconstitutional police policy can be identified, federal courts need only enjoin the implementation of the policy.").

*United States v. Cnty. of Maricopa, Arizona*, 889 F.3d 648, powerfully demonstrates this point.  In that case, the United States used Section 12601 to attack alleged racially discriminatory policing policies implemented by a former Sheriff of Maricopa County, Arizona.  Pursuant to these policies, the United States alleged that the county's law enforcement officers routinely targeted Latinos for pretextual traffic stops aimed at detecting violations of federal immigration law. *Maricopa*, 889 F.3d at 649.  One of the issues the court decided in the case is whether Section 12601 authorizes municipal liability for the implementation of official policies.  The Court held that it does. *Id*. at 652-53.

The court began its analysis by noting that Section 12601 shares important similarities with 42 U.S.C. § 1983. *Id*. at 653.  Both statutes were enacted to create broad remedies for the violation of federally protected civil rights. *Id*.  "And, like § 1983, § 12601 imposes liability on local governments." *Id*.  Indeed, Section 12601 "*goes even further than Section 1983*," making it

---

[9] Section 12601 was formerly codified at 42 U.S.C. S 14141.

14

unlawful for "any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority" to engage in the prohibited conduct. *Id*. (emphasis added). The court held that it was unnecessary for it to decide whether Section 12601 imposed liability on local governments based on agency principles. *Id*. Rather,

> It is enough for us to conclude, as we do, that § 12601 *at least imposes liability on a governmental authority whose own official policy* causes it to engage in 'a pattern or practice of conduct by law enforcement officers' that deprives persons of federally protected rights . . .. In short, Maricopa County is liable for violations of . . . § 12601 stemming from its own official policies.

*Id*. (emphasis added). Thus, the Circuit Court held that the district court correctly held the county liable for the violations of Section 12601 caused by its own official policies. *Id*.

In this case, the District enacted certain unconstitutional laws. Pursuant to those laws, the District's law enforcement officers have engaged in a pattern or practice of conduct that deprives persons of federally protected rights, specifically the right to bear arms protected by the Second Amendment. Compl. ¶¶ 22, 40-41. Thus, like Maricopa County, the District is liable for violations of Section 12601 stemming from its own official policies.

The District argues that because Section 12601 authorizes only declaratory and injunctive relief, it is not effective in remedying unconstitutional laws, because the "offending law would remain on the books." Def. Memo. 19. This argument is hard to understand. Section 12601 is similar to Section 1983 in that both statutes create a remedy for violation of federally protected civil rights. *Maricopa County*, 889 F.3d at 653. Individuals routinely bring Section 1983 constitutional claims against state officials in their official capacity. Such plaintiffs are limited to injunctive relief,[10] and if they win the offending law remains on the books, though its enforcement

---

[10] *Minnesota RFL Republican Farmer Lab. Caucus v. Moriarty*, 108 F.4th 1035, 1037 (8th Cir. 2024).

is enjoined.  No one would suggest that is a "nonsensical" result, as Defendants now suggest is the case when the United States uses Section 12601 to obtain identical relief.  Def. Memo. 19.

Finally, Defendants assert that nothing indicates that Congress designed Section 12601 to operate for the Justice Department in a manner similar to the way Section 1983 operates for private individuals. Def. Memo. 24.  That is exactly backwards.  Section 12601 does exactly that.  The statutes share important similarities and were enacted so that different types of plaintiffs could achieve the same goal, i.e., remedying violations of federally protected rights.  *Maricopa County*, 889 F.3d at 653.

C.      **Legislative History Does Not Modify Section 12601.**

Unable to muster support for its arguments from the statutory text, Defendants urges the Court to examine Section 12601's legislative history and adopt a construction of the statute that is radically narrower than the construction mandated by its plain text.  Def. Memo. 22-24.  There are many problems with this approach, not the least of which is the fact that Section 12601 has *no* legislative history.[11]  Second, even if the legislative history of the prior bill was relevant, that history undermines the Defendants' arguments.  The United States has argued that the standards of conduct prescribed under Section 12601 are coterminous with the standards of conduct prescribed by the Constitution (and applicable laws of the United States protecting civil rights).  And that is exactly what the legislative history of the prior bill states:  "The standards of conduct under the Act *are the same as those under the Constitution*, presently enforced in damage actions

---

[11] Apparently, no hearings were held on this provision when it was passed in 1994.  Instead, the statute is a successor to a similar provision of the Omnibus Crime Control Act of 1991 concerning which hearings were held; however, that bill was never actually promulgated. *United States v. City of Columbus, Ohio*, 2000 WL 1133166, at *3 (S.D. Ohio 2000).

under section 1983." *U.S. v. City of Columbis, Ohio*, 2000 WL 1133166, 3 (S.D. Ohio Aug. 3, 2000) (emphasis added).[12]

However, the most important reason to reject Defendants' "legislative history" argument is the one given by the Ninth Circuit when it rejected similar appeals to Section 12601's history: "[L]egislative history is not the law." *United States v. Town of Colorado City*, 935 F.3d 804, 810-11 (9th Cir. 2019) (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018)). Once Congress enacts a statute, courts do not inquire what the legislature meant, they ask only what the statute means. *Epic*, *supra*, 584 U.S. at 523 (internal citation and quotation marks omitted). The Supreme Court has cautioned against following the example of those who "abhor plain meaning and preferred instead to elevate legislative history and their own curated accounts of a law's 'purpose' over enacted statutory text." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 443 n. 6 (2024) (cleaned up) (internal citation and quotation marks omitted). In other words, *Loper Bright* warned against the very tactics used by Defendants, who want to elevate their "curated account" of the Section 12601's real "purpose" over the statutory text.

A court's task in construing a statute "is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Negonsott v. Samuels*, 507 U.S. 99, 104 (1993). The best indication of Congress's intentions is the text of the statute itself. *OMJ Pharms., Inc. v. United States*, 753 F.3d 333, 340 (1st Cir. 2014). Where the statutory text is unambiguous, courts are not permitted to expand or contract that text based on legislative history. *Goldring v. D.C.*, 416 F.3d 70, 74 (D.C. Cir. 2005). When the "statute's language is plain, the sole function of the courts—at least where the disposition

---

[12] To be sure, the legislative history discusses police brutality and the Rodney King incident as Defendants suggest, but nothing in that history supports the proposition that the statutory authority conferred on the Attorney General by Section 12601 is limited to remedying incidents of police brutality.

17

required by the text is not absurd—is to enforce it according to its terms." *Id*. (quoting *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004)). *See also Ratzlaf v. United States*, 510 U.S. 135, (1994) (courts should "not resort to legislative history to cloud a statutory text that is clear."); *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 808–09 n.3 (1989) ("Legislative history is irrelevant to the interpretation of an unambiguous statute.").

As the D.C. Circuit has observed, sometimes parties are able to point to statements in the legislative history of a statute that seem to alter the plain meaning of the text. This is exactly where these rules have their most purchase.

> [T]here would be no need for a rule—or repeated admonition from the Supreme Court—that there should be no resort to legislative history when language is plain and does not lead to an absurd result, if the rule did not apply precisely when plain language and legislative history may seem to point in opposite directions.

*U.S. ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 494–95 (D.C. Cir. 2004). In summary, Section 12601 is unambiguous. Subsection 12601(a) is violated any time law enforcement officials engage in a pattern or practice of conduct that deprives a person of *any right* protected by the Constitution. Defendants' efforts to radically narrow the applicability of the statute by appealing to the legislative history of a bill that did not become law must fail.

### D.    Past Agency Practice Does Not Limit the Scope of a Statute.

Defendants engage in an extensive discussion of past agency practice with respect to the enforcement of Section 12601. Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Def. Memo.") 8-10; 24-26. According to Defendants, in the past, the Civil Rights Division has focused exclusively on police brutality cases and has not enforced Section 12601 in a manner similar to the way it is enforcing the statute in this action. Of course, none of the alleged facts on which Defendants rely for these assertions appear in the four corners of the

18

Complaint, and as discussed above (see "Standard of Review"), it would be improper for the Court to consider these alleged facts in its evaluation of Defendants' motion.  But even if the Court were to consider the matters that Defendants  and their Amici raise beyond the four corners of the Complaint, their discussion of past agency practice would not move the needle on their motion for several reasons.

First, the Defendants' assertions are false.[13]  The Division's past practice has not been as limited as Defendants suggest.  One of the Division's major enforcement actions was instituted to address violations of citizens' religious liberties under the First Amendment.  In *United States v. Town of Colorado City*, 935 F.3d 804 (9th Cir. 2019), there were no allegations of police brutality or other violations of Fourth Amendment rights.  If the statute has been employed by the Division to remedy First Amendment violations, why can't it also be employed to remedy Second Amendment violations?  Defendants do not say.

More importantly, even if it is true that the Division is enforcing the statute in a way that is different from its past practice, that fact has no relevance to the scope of the authority Congress granted to the Attorney General in Section 12601.  In other words, past agency practice does not delineate the scope of the authority set forth in a statute.  Nor does it bind the agency or preclude it from deviating from that practice in the future.  The Supreme Court made this clear in *United States v. Am. Union Transp.*, where it stated:

> It is pointed out that until the present proceeding neither the United States Maritime Commission nor its predecessor, the United States Shipping Board, attempted to exercise jurisdiction over forwarders such as the appellees . . ..  It is not to be inferred however that either of those bodies held the view that they were without such jurisdiction or that, if either did, that fact would be conclusive.  *An administrative agency is not ordinarily under an obligation immediately to test the limits of its jurisdiction.*  It may await an appropriate opportunity or clear need for doing so.  It may also be mistaken as to the scope of its authority . . .

---

[13] Defendants want the Court to decide their motion to dismiss on the basis of a disputed factual claim. The Court should decline to do so.

> Although failure to exercise power may be significant as a factor shedding light on whether it has been conferred . . . that fact alone neither extinguishes power granted nor establishes that the agency to which it is given regards itself as impotent. *Authority actually granted by Congress of course cannot evaporate through lack of administrative exercise.*

327 U.S. 437, 454 n.18 (internal citations and quotation marks omitted) (emphasis added). *See also Fed. Trade Comm'n v. Bunte Bros.*, 312 U.S. 349, 352 (1941) ("Authority actually granted by Congress of course cannot evaporate through lack of administrative exercise."); *United States v. E. I. du Pont de Nemours & Co.*, 353 U.S. 586, 590 (1957) (holding that the mere failure of an administrative agency to act is in no sense "a binding administrative interpretation" that the government lacks the authority to act); *Nat'l Ass'n of Sec. Dealers, Inc. v. S.E.C.*, 431 F.3d 803, 811 (D.C. Cir. 2005) (explaining that agency's past practice may be noteworthy, but the court is not legally bound by its past practices under a statute).

In *Jones Bros., Inc. v. Sec'y of Labor, Mine Safety & Health Admin.*, 68 F.4th 289 (6th Cir. 2023), a federal contractor objected when an inspector with the Federal Mine Safety & Health Administration deviated from the Administration's long-standing prior practice in dealing with the contractor. Citing *Am. Union Transp*, the Circuit Court rejected the contractor's argument, holding that the Administration's past enforcement practices did not alter its authority under the relevant law. *Id*. at 301.

In the face of this precedent, Defendants cite the passage in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 386 (2024), where the Court held that when the Executive Branch issues an interpretation of a statute, the agency's practice pursuant to that interpretation can assist the Court in construing the law. Def. Memo. 24. Defendants' understanding of and reliance on *Loper Bright* is problematic. First, Defendants have not identified a definitive interpretation of the statute issued by the Department that states that the Department believes Section 12601 does not confer

20

on it the authority to bring a case like this one.  Second, even if there were one, in the very next paragraph, *Loper Bright* states that the courts are not bound by such an interpretation.  *Id*.  Finally, and most importantly, the passage cited by Defendants states that an agency's interpretation of a statute should be accorded respect in cases where the court is construing a "doubtful and ambiguous law."  *Id*. at 385-86.  The proposition for which Defendants cited *Loper Bright* has no application where, as here, the statute is not ambiguous.  The bottom line is that Defendants' have not provided their interpretation of Section 12601 to the Court for the purpose of aiding it in resolving ambiguities in the statutory text.  Far from it.  Rather, Defendants have provided their interpretation in the hope that the Court will defer to them and accede to their effort to change the plain meaning of unambiguous statutory text.  That would be error.  The Court should decline to do so.

Finally, Defendants complain that when it brought this action, the Department did not follow the same pre-litigation procedures it followed in the past.  Def. Memo 24-26.  That is of no consequence.  "Internal operating manuals . . . do not carry the force of law, bind the agency, or confer rights upon the regulated entity." *Reich v. Manganas*, 70 F.3d 434, 437 (6th Cir. 1995).

### E.      The Phrase "Systemic Police Misconduct" Does Not Appear in the Statute.

Defendants argue that Section 12601 does not authorize this action because the Complaint does not challenge "systemic police misconduct."  Def. Memo. 13.  The obvious problem with Defendants' argument is that the phrase "systemic police misconduct" appears nowhere in the statute.    Instead, the statute authorizes the Department of Justice to bring actions against government authorities and their agents who are engaging in a pattern or practice of conduct by law enforcement officers of depriving citizens of their constitutional rights.  34 U.S.C. § 12601.

That said, Defendants' "systemic police misconduct" phrase, properly understood, actually applies to this case. When a law enforcement officer deprives a citizen of a constitutional right—whether that right stems from the First Amendment, the Second Amendment, the Fourth Amendment or any other constitutional provision—the officer is obviously engaging in "misconduct." And "systemic" can be a synonym for "pattern or practice of conduct." Under those circumstances, when Defendants' law enforcement officers engage in a pattern or practice of depriving the citizens of the District of their Second Amendment rights, they are in fact engaging in systemic police misconduct.

### F.    There Is No Requirement that Congress Must Have Anticipated All of the Possible Applications of Section 12601.

Defendants argue that Section 12601 is limited to addressing police brutality because that was what Congress had in mind when it enacted the statute. Def. Memo. 22-23. Defendants cite no authority for the proposition that when, as here, Congress enacts a broadly worded statute, a court must nevertheless restrict application of the statute to only those specific situations members of Congress were thinking about when the statute was under consideration. There is no such authority. Instead, the text of the statute controls even if Congress did not anticipate all of the applications of the text. And "the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1304 (D.C. Cir. 2023) (quoting *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (cleaned up)).

### G.    Defendants' Interpretation of Section 12601 Leads to Absurd Results.

Defendants' interpretation of Section 12601 would lead to the absurd result that the United States would be powerless to intervene were the District to enact a firearms ban that everyone agrees is unconstitutional. This is easy to demonstrate. In *Heller*, 554 U.S. 570, the Supreme

22

Court struck down the District's ban on the possession of handguns even in the home for the purpose of self-defense.  Suppose tomorrow, the District enacted a law banning the possession of handguns even for the purpose of self-defense in the home.  Presumably, everyone would agree that such a law would be flagrantly unconstitutional.  Then suppose the District's law enforcement officers began arresting people for breaking this flagrantly unconstitutional law.

In this scenario, no one could plausibly argue that the District's law enforcement officers were not engaging in a "pattern or practice of conduct . . . that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States."  But, under Defendants' argument, the United States would be powerless to act against such a flagrantly unconstitutional pattern or practice of conduct because such an action would amount to a "facial challenge" to the unconstitutional law itself.  That would be an absurd result, and statutes must not be interpreted in such a way that could lead to such a result.  *In re Nofziger*, 925 F.2d 428, 434 (D.C. Cir. 1991).

In evaluating Defendants' statutory authority arguments, the Court should assume the merits of Plaintiff's claim that the District's laws violate the constitution.  *Cf. Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1030 (D.C. Cir. 2003) (holding that "at the motion to dismiss stage, a plaintiff's non-frivolous contention regarding the meaning of a statute must be taken as correct for purposes of" evaluating whether it may bring a claim under the statute).

## III.  Defendants' "Facial Challenge" Strawman Attack Fails.

Having failed in their efforts to alter the plain text of Section 12601, Defendants' next tactic is to erect a strawman and knock it down.  Thus, they assert that the Department has brought a "facial challenge" to the District's laws and the statute does not authorize facial challenges. Def.

23

Memo. 28-31. Defendants' strawman attack against the Complaint fails, because the United States has manifestly not brought a facial challenge to the District's laws. Rather, as discussed above, the United States alleges that in enforcing the District's unconstitutional law, Defendants have engaged in a pattern or practice of conduct that deprives persons of their constitutional rights. The Department is seeking an injunction against enforcement of the subset of those laws that are unconstitutional. No amount of goal post shifting by Defendants will transform Plaintiff's challenge to Defendants' unconstitutional conduct into a facial challenge to an entire law.

A "facial challenge" to a law is a challenge in which the plaintiff must "establish that no set of circumstances exists under which the [law] would be valid." *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Thus, to prevail against a facial challenge, Defendants need only demonstrate that the laws in question are constitutional in some of their applications. *Id*. Nowhere in its Complaint does the United States use the term "facial challenge." Nor does the Complaint allege that the District's laws are unconstitutional in all of their applications. Indeed, the Complaint specifically states that the United States is *not* challenging the provisions of the laws that prohibit the registration and/or possession of automatic weapons (i.e., machine guns). Compl. ¶ 43(a)(ii). Defendants themselves provide another example when they note that the District prohibits the possession of grenade launchers. Def. Mem. 36 (citing D.C. Code § 7-2501.01(3A)(A)(i)(IV)(dd)). However, nothing in the Complaint can be construed as a challenge to the enforcement of that provision.

In a perhaps unguarded moment, Defendants admit in their Memorandum that the Complaint does *not* bring a facial challenge to the challenged laws in all of their applications. On page 35, Defendants state: "[The Complaint] does not allege—even in a conclusory fashion—that all weapons covered by the challenged laws are in common use, as necessary to challenge the laws

on their face or in their entirety.  Quite the opposite, the Complaint stops noticeably short of making that allegation."  Accordingly, even the Defendants concede that the Complaint is not a facial challenge to the District's assault weapon ban.  The Court can simply disregard Defendant's arguments based on their assumption that the United States has brought such a challenge.

## IV.    There Is No Exception to Section 12601 Liability for Acts Taken Pursuant to Laws.

Defendants seem to be under the impression that "a pattern or practice of conduct by law enforcement officers" that is the direct result of implementing a city's laws is not subject to Section 12601.  But the statute does not provide an exception for a pattern or practice that a legislative body mandates.  Nor does "common sense" support shoehorning such an exception into the statute (if that were even possible). In fact, just the opposite is true.  If anything, a pattern or practice of conduct of federal civil rights deprivation is the *most problematic* when it is mandated at the highest level, such as a statute the governing legislative body enacts, rather than merely the "discretionary officer conduct" to which Defendants refer.  *See* Def. Memo. 25.  This is the very reason why a "governmental authority" is subject to liability under Section 12601 when its "own official policy or custom caused the deprivation of federal rights." *United States v. Cnty. of Maricopa, Arizona*, 889 F.3d 648, 652 (9th Cir. 2018).  The Department previously has reached findings under Section 12601 that law enforcement engaged in misconduct by enforcing laws that the Department alleged were unconstitutional.  The allegations of the Complaint rest on a similar application of Section 12601.

In short, there is nothing "novel" about applying Section 12601 to law enforcement conduct that policymakers at the highest level mandate, whether by statute or otherwise, that deprives people of constitutional rights.  What is novel, however, is Defendants' insistence that a pattern or practice of law enforcement conduct that deprives people of constitutional rights falls outside the

25

reach of Section 12601 because that pattern or practice has been approved by politicians. Defendants cite no authority for the absurd proposition that Congress intended to empower state and local governmental authorities to immunize law enforcement agencies they direct from Section 12601 liability by affirmatively mandating that such law enforcement agencies carry out the problematic pattern or practice of constitutional rights deprivation as part of their official duties.

## V.    Defendants' Supposed Federalism Concerns Are Meritless.

Defendants' federalism concerns are meritless for a simple reason.  No such concerns extend to relations between the United States and the District.  Unlike a State (which retains power under the Tenth Amendment), the United States has plenary power over the District.  Moreover, Defendants fail to explain their assertion that holding governmental authorities accountable when their official policies affirmatively require their law enforcement officers to deprive people of their constitutional rights would unleash a "seismic shift in police power" and do violence to the "[b]asic canons of federalism."  Def. Memo. 26.

Defendants' citation to *United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1980) in support of their supposed federalism concerns actually undermines their argument.  In that case, the Attorney General asserted that the Fourteenth Amendment granted *him* the power to bring actions against cities to remedy civil rights violations.  *Id*. at 199.  The court disagreed, holding that only Congress has the power under Section 5 of the Fourteenth Amendment "to enforce, *by appropriate legislation*, the provisions of this article."  *Id*. at 200 (emphasis added).  The court noted that Congress had exercised this power on many occasions but had refused to grant to the Attorney General the civil-rights enforcement power he asserted.  *Id*.  Thus, the fundamental holding of the case is that "it would be entirely inappropriate for a federal court to overrule the explicit decisions of Congress not to increase federal executive and judicial authority over state

26

and local governments in this manner." *Id*.  The court never held that Congress could not give the Attorney General the authority if it chose to do so.  It held only that Congress had not yet done so.  That 1980 decision predated Section 12601's enactment in 1994.  Thus, 14 years after *City of Philadelphia*, Congress finally exercised its power (the power the court recognized it had) to confer on the Attorney General the authority to bring cases to remedy civil rights violations.  And just as it was "entirely inappropriate to overrule the explicit decision of Congress" not to confer civil rights enforcement authority on the Attorney General, *Id*., it would now be entirely inappropriate for a court to overrule the explicit decision of Congress to do so.

Far from being limited by *City of Philadelphia*, Section 12601 was a response to (and an overriding of) that case.  In *United States v. City of Columbus, Ohio*, 2000 WL 1133166, at *3 (S.D. Ohio 2000), the court noted that the legislative history of the predecessor bill to Section 12601 stated that the doctrine set forth in *City of Philadelphia* represents a serious and outdated gap in the federal scheme for protecting constitutional rights. *City of Columbus, Ohio,* at *3. Congress passed Section 12601 to close that gap.  Accordingly, Defendant's federalism argument is self-defeating and must fail.

## CONCLUSION

The scope of Section 12601 is extraordinarily broad.  The statute provides a remedy any time a government authority or its agents engage in a pattern or practice of conduct by law enforcement officers that deprives citizens of their constitutional rights.  Defendants and Amici assert that the statute can be used to address only certain kinds of constitutional violations. Defendants are so offended by the application of Section 12601 to protect Second Amendment Rights of law abiding citizens that they would rather gut the broad constitutional protection Congress afforded than see the generally applicable protection used in a way that they would not.

27

Their argument finds no support for such statutory construction and contradicts other courts' application of Section 12601 (and Amici's own application in past administrations).    The Department has more than met the plausible basis for a cause of action under Section 12601. Accordingly, the United States respectfully urges the Court to deny Defendants' motion in full.    If the court should grant in any part the Defendants' motion, the Department seeks leave to amend its Complaint.

DATED: April 1, 2026

Respectfully submitted:
HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

JESUS OSETE
Principal Deputy Assistant Attorney General

R. JONAS GEISSLER
Deputy Assistant Attorney General

 /s/ Andrew M. Darlington
ANDREW M. DARLINGTON
(D.C. No. 7688434)
Acting Chief - Second Amendment Section
950 Pennsylvania Ave. NW
Washington, D.C.  20530
(202) 550-5305

GREGORY DOLIN
(D.C. No. 497455)
Senior Counsel

BARRY K. ARRINGTON
(D.C. No. 7710925)
WILLIAM J. HANRAHAN
(D.C. No. 7706569)
AUSTIN FULK
(D.C. No. 7706341)
Trial Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA